**Hearing Date: November 12, 2009**
**Hearing Time: 11:00 a.m.**

BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 885-5000
Facsimile: (212) 885-5001
Thomas E. Biron, Esq.
Rocco A. Cavaliere, Esq.

*Attorneys for CIT Healthcare LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                                             :
In re:                                                       :    Chapter 11
                                                             :
SONIX MEDICAL RESOURCES, INC., *et al.*,[1]                  :    Case No. 09-77781 (dte)
                                                             :
                                Debtors.                     :    (Jointly Administered)
                                                             :
-------------------------------------------------------------X

## CIT HEALTHCARE LLC'S SECOND OBJECTION TO DEBTORS' APPLICATION FOR ENTRY OF ORDER AUTHORIZING DEBTORS' USE OF CASH COLLATERAL AND FOR RELATED RELIEF [2]

CIT Healthcare LLC ("CIT Healthcare"), the prepetition secured lender to the debtors and debtors in possession (collectively, the "Debtors") in the above-referenced chapter 11 cases hereby objects to the Debtors' request for continued use of cash collateral. In support of this Second Objection, CIT Healthcare respectfully represents as follows:

### PRELIMINARY STATEMENT

1.  As stated in its Initial Objection [Dkt. No. 27], which is incorporated herein, CIT Healthcare for some time has been concerned about (i) underperformance of the Debtors'

---

[1] The Debtors include Sonix Medical Resources, Inc., MRO Resources, Inc., Toms River Resources, Inc., Stony Acquisitions, Inc., Sonix Management Resources, Inc., Chatmondhad Resources, Inc., QKSI Resources, Inc., Brooklyn 49th Street Resources, Inc., Englewood Resources, Inc., Chatham Medical Resources, Inc., and Brick Resources, Inc.

[2] By agreement of the Debtors, CIT Healthcare was granted an extension of the objection deadline through November 10, 2009 at 5:00 p.m.

business operations, (ii) the integrity of CIT Healthcare's collateral base, and (iii) commingling of business operations both among the Debtors and between the Debtors and a number of their non-debtor affiliates. Of paramount concern is the use of cash and property belonging to certain Debtors to support losing operations of other Debtors as well as operations of non-debtors, in violation of covenants in the CIT Healthcare loan documents. The Debtors refuted CIT Healthcare's protests, but also continually refused to provide accurate and transparent information of operations and of collateral values. Thus, as the Initial Objection describes, CIT Healthcare instituted suit in the New York Supreme Court to obtain, *inter alia*, the appointment of a Receiver for the Debtors. These Chapter 11 cases were filed hours before, and for the sole purpose of staying, the appointment of a Receiver by the state court.

2. After filing its Initial Objection, CIT Healthcare indicated it would consent to the use of cash collateral for an initial interim period of 3 weeks through November 13, 2009, in exchange for specific information reporting obligations and access rights to be imposed on the Debtors (and indirectly, on their non-debtor affiliates) along with other measures. The Court's Order Authorizing Use of Cash Collateral For An Interim Period entered October 26, 2009 [Dkt. 40] (the "First Interim Period Cash Collateral Order") embodies those conditions.

3. The Debtors' reports of operations during the first few weeks of these cases along with the Debtors' stated inability to complete certain of the reports they are required to provide demonstrate management failings along with underperforming operations and a degradation of CIT Healthcare's collateral base to a degree that the mere granting of replacement liens as provided in the First Interim Period Cash Collateral Order is insufficient to provide adequate protection for the continued use of cash collateral. Thus, CIT Healthcare objects to the continued use of cash collateral after the end of the First Interim Period on November 13, 2009.

4. Notwithstanding this Second Objection, CIT Healthcare has advised the Debtors that it will consent to the use of cash collateral for a Second Interim Period of three weeks on conditions spelled out in more detail hereafter, but which include: additional adequate protection in the form of periodic cash payments to CIT Healthcare in accordance with 11 U.S.C. § 361(1); liens granted to CIT Healthcare by the non-debtor affiliates as additional collateral to secure the Debtors' obligations to CIT Healthcare; and additional reporting, along with the recognition by the Debtors that they will be unable to reorganize without either a significant cash equity infusion or a third party strategic transaction with the result that CIT Healthcare, with the Debtors' blessing, will necessarily be interfacing with third parties during the Second Interim Period.[3]

### THE DEBTORS CANNOT ESTABLISH THAT CIT HEALTHCARE IS ADEQUATELY PROTECTED AND THEREFORE ANY CONTINUED USE OF CIT HEALTHCARE'S CASH COLLATERAL SHOULD BE CONDITIONED ON THE MEASURES CIT HEALTHCARE SEEKS

5. The Initial Objection is incorporated herein by reference [Dkt No. 27]. CIT Healthcare respectfully refers the Court to the Initial Objection for the relevant pre-petition history between the parties and the applicable legal authority governing the Debtors' request for use of cash collateral.

6. The Debtors' businesses have continued to lose money since the Petition Date, which is disconcerting but certainly not surprising considering the Debtors' consistently poor performance in the previous two years. "Scan volume," a critical barometer of assessing revenue in the diagnostic imaging field, has decreased by at least 5% since the Petition Date. Due to reduced scan volume, CIT Healthcare believes that accounts receivable and revenue is diminished by roughly 5%, resulting in an approximate $25,000 loss per week in revenue since

---

[3] As the Debtors have not agreed to these measures, CIT Healthcare files this Second Objection to preserve its rights.

the Petition Date.[4] Simply stated, CIT Healthcare is not protected by the replacement liens granted under the First Interim Period Cash Collateral Order because a loss in revenue consequently reduces the generation of new receivables. Further, the commingling of Debtor assets with non-Debtor assets or commingling by and between profitable Debtors and non-profitable Debtors are violations of the Credit and Guaranty Agreement and must stop immediately.

7. As a result of the foregoing concerns, CIT Healthcare requests appropriate forms of adequate protection to protect their interests, in exchange for its consent to the continued use of cash collateral.

8. First, CIT Healthcare requests that the Court require the Debtors to establish a separate cash collateral account for CIT Healthcare in which the Debtors will be required to deposit $25,000 per week from the Petition Date through the end of the next interim cash collateral period. This reasonable request corresponds to the bare minimum in loss of Debtor revenue that CIT Healthcare has been able to discern thus far. Further, this relief is consistent with 11 U.S.C. § 361(1).

9. Second, in order to recognize the part played in these cases by non-debtor affiliates and to provide some protection to CIT Healthcare, CIT Healthcare seeks to condition continued use of cash collateral on CIT Healthcare being granted perfected security interests in and on all personal property of Sonix, Inc., a non-debtor, and the other non-debtor entities owned or controlled by the Debtors' management, as follows: Medi/Tab Consulting Co., Inc., Advanced Healthcare Resources, Inc., Bethesda Resources, Inc., US Heartcare Management,

---

[4] Additionally, certain of the Debtors' cash is controlled by professional corporations run by radiologists who have restricted, in some cases, the Debtors' access to cash that belongs to the Debtors and is CIT Healthcare's collateral. Without this cash, CIT Healthcare's collateral base will deteriorate further and the Debtors' business will deteriorate, also further diminishing CIT's collateral base.

Inc., Sonix Pet Resources, Inc., Open Resources, Inc., Advanced Health Management Services, Inc., X-Ray AssociatesOpen MRI And CT Center LLC, Whiting Diagnostic Assoc., LLC, Brick PET Partners, LLC, and finally TriState Diagnostic Imaging Resources, LLC, along with other entities which are determined to play a role in the Debtors' businesses.[5] CIT Healthcare's concern about the non-debtor entities control over and interference with the Debtors, and their assets and bank accounts as well as business opportunities, is based on a solid foundation. As an example, the Debtor Brick Resources, Inc. has operated in Brick, New Jersey for well over two years. Thereafter, in 2008, TriState Diagnostic Imaging Resources, LLC, a non-debtor entity controlled by Mr. Om Soni, opened a competing facility in Brick, New Jersey. Beside the adverse effect on the Debtors' corporate opportunity, initial reports indicate that TriState and Debtor Brick Resources' cash and other assets are commingled along with the generation of revenue at the TriState facility that otherwise may have been generated by the Debtor Brick Resources. Other parties also raised these concerns. *See Objection of Hitachi Capital America Corp. To Debtors' Motion To Continue Using Existing Centralized Cash Management System* [Dkt No. 81]; *See also, Limited Objection of New Jersey Diagnostic Imaging & Therapy, P.A. to Debtors' Continued Use of Cash Collateral* [Dkt. No. 83].

10. Third, CIT Healthcare requests that the Debtors provide CIT Healthcare with control over account no. 4200021520 in which Debtor Chatham Medical Resources, Inc. is the named depository.[6] CIT Healthcare is party to a Control Agreement with Chatham and allowing CIT Healthcare with access to such bank account is consistent with the Control Agreement

---

[5] CIT Healthcare understands that this Court does not have authority over non-debtor entities. However, this Court does have authority to condition the Debtors' use of cash collateral on the non-debtors' provision of liens and security interests on their assets. *See* 11 U.S.C. § 363(e) ("on request of an entity that has an interest in property used . . . or proposed to be used, . . . the court . . . shall prohibit or condition such use. . . as necessary to provide adequate protection of such interest").

[6] CIT Healthcare originally had Control Agreements related to all of the Debtors' bank accounts when the Credit and Guaranty Agreement was signed. However, since that time, without consent of or notice to CIT Healthcare, the Debtors closed such bank accounts and opened substitute accounts.

signed in connection with the Credit and Guaranty Agreement. This relief would allow CIT Healthcare to determine whether monies coming into this account from profitable locations are being utilized by non-profitable Debtors whose facilities should simply be closed to avoid a further cash drain on the Debtors' estates and reduction of CIT Healthcare's recovery.

11. Fourth, CIT requests that this Court condition the Debtors' use of cash collateral on the Debtors' agreement to provide certain key financial information set forth on Exhibit "A" to this Objection. As the Court may recall, the First Interim Period Cash Collateral Order contains various reporting requirements by the Debtors. While the Debtors have complied with most information requests, the Debtors failed to provide certain key information related to revenues, accounts receivables and expenditures on an <u>entity</u> <u>by</u> <u>entity</u> basis as required by Item No. 1 of Exhibit B to the First Interim Period Cash Collateral Order. This particular item of information was of utmost importance to CIT Healthcare as such information would allow CIT Healthcare, to among other things, determine the profitability and cash drain of each location. Further, the Debtors have failed to provide CIT Healthcare with the cash disbursements of the Debtors and non-debtors required under Item 8 of Exhibit B to the Cash Collateral Order. As a result, CIT Healthcare reiterates its request that the Debtors provide (i) all of the information required under Items No. 1 and 8 of Exhibit B of the Cash Collateral Order, (ii) the Weekly Reports required under the First Interim Period Cash Collateral Order, and (iii) the financial information requested in Exhibit "A" hereto.[7]

12. Finally, CIT Healthcare believes that the Debtors must implement quick and effective steps to advise this Court and the various constituents in these cases of their business plan for the immediate future. The Debtors should not be granted unfettered access to CIT's

---

[7] The information in Exhibit A to this Motion is substantially similar to the requests in Exhibit B to the First Interim Period Cash Collateral Order.

cash collateral for businesses that may be floundering with no effective action plan. As such, CIT Healthcare requests that the Court condition the Debtors' use of cash collateral through December 4, 2009 on the Debtors' agreement to explore a strategic transaction with potential suitors for one or more of the Debtors' facilities or on the funded agreement by the Debtors' principals to contribute as equity significant amounts of cash. In furtherance thereof, the Debtors should agree to work in tandem with CIT Healthcare in this regard and permit CIT Healthcare to speak directly with interested parties.

13. Notwithstanding CIT Healthcare's objection to the Debtors' continued use of cash collateral, in the event that the Debtors agree to the foregoing forms of adequate protection, or the Court conditions further cash collateral use on these measures and the Debtors and non-debtors comply, CIT Healthcare will consent to the Debtors use of cash collateral through December 4, 2009, the week in which payroll is to be paid by the Debtors. Absent such consent, the Debtors simply cannot satisfy their high burden of showing by clear and convincing evidence that it can provide adequate protection that is sufficient to justify the use of CIT Healthcare's cash collateral.

Dated: New York, New York,
      November 10, 2009

                                    BLANK ROME LLP

                                    By: /s/ Rocco A. Cavaliere
                                         Rocco A. Cavaliere, Esq.
                                         The Chrysler Building
                                         New York, New York 10174
                                         Telephone: (212) 885-5000
                                         Facsimile: (212) 885-5001
                                         Rcavaliere@BlankRome.com

                                                   -and-

Thomas E. Biron, Esq.  
One Logan Square  
130 North 18th Street  
Philadelphia, PA 19103  
Telephone:  (215) 569-5500  
Facsimile:  (215) 569-5555  
Biron@BlankRome.com  

*Attorneys for CIT Healthcare LLC*