John K. Sherwood, Esq.
Michael Savetsky, Esq.
Cassandra Porter, Esq.
LOWENSTEIN SANDLER PC
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
- and -
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400

*Attorneys for New Jersey Diagnostic Imaging & Therapy, P.A.*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SONIX MEDICAL RESOURCES, INC. *et al.*,[1] | Case No. 09-77781 (DTE) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF NEW JERSEY DIAGNOSTIC IMAGING AND THERAPY, P.A. TO DEBTORS' MOTIONS FOR (I) CONTINUED USE OF CASH COLLATERAL AND (II) EXTENSION OF EXCLUSIVE PERIOD TO FILE A PLAN OF REORGANIZATION AND TO SOLICIT <u>ACCEPTANCES WITH RESPECT THERETO</u>**

---

[1] The Debtors are: Sonix Medical Resources, Inc., MRO Resources, Inc., Toms River Resources, Inc., Stony Acquisitions, Inc., Sonix Management Resources, Inc., Chatmondhad Resources, Inc., QKSI Resources, Inc., Brooklyn 49th Street Resources, Inc., Englewood Resources, Inc., Chatham Medical Resources, Inc., and Brick Resources, Inc.

New Jersey Diagnostic Imaging and Therapy P.A. ("NJDIT") by and through its undersigned counsel, submits this limited objection and reservation of rights with respect to the Debtors' Motions for (i) Continued Use of Cash Collateral (the "Cash Collateral Motion"), and (ii) an Extension of the Exclusive Period to File a Plan of Reorganization and to Solicit Acceptances With Respect Thereto (the "Exclusivity Motion"). In support hereof, NJDIT respectfully represents as follows:

## PRELIMINARY STATEMENT

1. Both the Cash Collateral Motion and the Exclusivity Motion rely on the premise that this is a Chapter 11 case with a reasonable prospect of reorganization. In considering these motions, NJDIT respectfully urges this Court to consider, and the Debtors to respond to, some very important questions -- Are these cases headed for administrative insolvency? How do the Debtors propose to address their post-petition operating losses? Based on recent events, NJDIT has concerns about the viability of the Debtors' operations. Most notably, NJDIT has witnessed in the past several months non-payment (or late payment) by the Debtors of critical post-petition expenses such as payroll, equipment lease payments, license assessments due to the State of New Jersey and other post-petition expenses necessary to the operation of the physician practices in this case, including NJDIT's practice. While payments critical to the preservation of the Debtors' estates are being neglected and unpaid, administrative claims are mounting and the Debtors' secured lender, CIT, has insisted upon payments totaling $40,000 per week as "adequate protection". Accordingly, before the Debtors are permitted to use cash collateral in accordance with previous terms, they must provide a complete assessment of the financial affairs of their estates which includes assessments as to profitability and the prospects for payment of Chapter 11 administrative expenses. Along similar lines, the Exclusivity Motion seems out-of-sorts in a case such as this. Although NJDIT has no present desire to file a Chapter 11 plan of reorganization, there is certainly no reason to preserve the Debtors' exclusive right to do so in

this case. That is, unless the Debtors can make some showing that there is progress being made in this regard and that this is an estate that can <u>afford</u> to confirm a Chapter 11 plan.

2. In sum, the Debtors should be compelled to put on a detailed case on the return date of these motions concerning the financial affairs of the Debtors and their prospects for reorganization.

## **RELEVANT BACKGROUND**

3. On October 15, 2009 (the "Petition Date"), Sonix Medical Resources, Inc., and certain of its subsidiaries (collectively, the "Debtors" or "Sonix") commenced these cases by filing petitions for voluntary relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). No trustee or examiner has been appointed in these cases. The Debtors continue to operate their businesses and properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. According to the Debtors' first day affidavit filed in these cases on the Petition Date [Docket No. 6], the Debtors operated eight (8) free standing diagnostic imaging / radiology centers located in the New York metropolitan area. All of these radiology centers were operated out of facilities leased by the Debtors. The Debtors have ceased operations at 2 of these facilities since the Petition Date.

5. NJDIT is a New Jersey professional corporation engaged in the practice of medicine in the specialty of radiology.

6. Pursuant to a certain Services Agreement between Brick Resources, Inc. (a Debtor herein, "Brick"), TriState Diagnostic Imaging Resources, LLC ("TriState") and NJDIT, dated as of October 31, 2006 (as amended from time to time, the "Services Agreement"),[2]

---

[2] TriState was added as a party to the Services Agreement by an amendment thereto dated as of July 30, 2008 (the "Second Amendment to Services Agreement").

NJDIT's physicians provide all radiology services to patients in connection with the operation of three (3) radiology centers located in Brick, New Jersey (the "Offices").

7. While TriState is not a Debtor in these cases, it is identified as the entity to which the license was issued at one (1) of the Offices, located at 495 Jack Martin Boulevard in Brick, New Jersey (the "495 Office"), and, upon information and belief, is closely affiliated with the Debtors.

8. Pursuant to the terms of the Services Agreement, Brick and/or TriState manages all of the business operations of the Offices. Brick and/or TriState is responsible, among other things, for all rent payments, all equipment lease payments, payments to third party vendors, payments for ambulatory care taxes and similar levies by the State of New Jersey, payroll for the administrative and technical personnel employed by Brick who provide services at the Offices, providing and maintaining the equipment, medical and other supplies and support services required for operation of the Offices, and handling all billing and collection services with respect to radiology services rendered to patients at the Offices.

## ARGUMENT

**The Cash Collateral Motion Should be Denied Absent Proof That the Debtors' Businesses Are Being Operated at a Profit and That the Estate is Capable of Paying All Accrued and Unpaid Administrative Expenses**

9. The Debtors have filed combined monthly operating reports for the period ending December 31, 2009. These reports show that for the month ended December 31, 2009, net cash flow was a positive $48,080. However, it does not appear that the estates' accrued expenses such as equipment leases, professional fees, U.S. Trustee fees, taxes, vendor claims, etc. are taken into account in reaching that figure. According to the Debtors' statement of operations, the consolidated Debtors suffered a net <u>loss</u> of $268,863. Most importantly, the Debtors' estates have unpaid post-petition accounts payable alone of $636,551 plus unpaid taxes, building leases,

equipment leases and professional fees. These figures are as of December 31, 2009 and must be updated and explained in complete detail. NJDIT fears that these cases may be substantially "in the hole" on an administrative claim basis.

10. NJDIT is also troubled by the fact that the Debtors' management has been accused of "stealing" money from employees' 401K accounts. (See Letter of Eileen Shannon to Court dated 1/20/10, Doc. 207). The Debtors must respond to the very serious allegations in this letter. Were funds taken by the Debtors' management from the employees' 401K accounts and if so, how much? Are these claims by the employees entitled to priority status and thus another administrative burden on the estates?

11. The Motion by the Debtors' landlord at 150 Motor Parkway, Hauppauge, New York for payment of administrative rent and the Debtors' Opposition to that Motion filed on January 26, 2010 [Doc 206] also raise concerns as to the viability of the Debtors. According to the Debtors, administrative rent at this location is not being paid -- at least $45,852.51 is due through January 2010 and at least another $13,912.53 will be due for February 2010. In their Opposition, the Debtors do not even commit to pay this administrative rent. Rather, they request that the status quo (free occupancy) be preserved until February 28, 2010. Also, given that the lease may be terminated on February 28, or sooner, NJDIT would like to know how Brick will be able to perform its obligations under the Services Agreement without access to these premises. Upon information and belief, the servers containing patient image data, billing records and medical and demographic patient data are housed at this location. These servers, therefore, are essential to the physician practices.

12. Additionally, during the week of January 18, 2010, the payroll checks of at least 50 employees at the Brick Offices bounced. It took well into the following weeks before these bounced payroll checks were ultimately honored. This has caused a severe morale problem with

the employees at the Brick Offices (especially when considered together with the 401K issue described above).

13. Failure to meet payroll and other necessary expenses with respect to the Brick Offices and other physician offices will not only dramatically decrease the value of these physician practices, but also, place in jeopardy the survival of these practices. In the case of NJDIT, the physicians are concerned that their radiology practice of 22 years is at risk due to non-payment of expenses and mounting debt. The Debtors must assure and represent to the Court that their cash collateral projections contain sufficient funds to remain current on all post-petition obligations at the Offices. Based on NJDIT's preliminary review of the proposed cash collateral budget, it appears that Brick has not scheduled a payment in the amount of $50,000 due to the State of New Jersey for ambulatory care assessments. Unless this payment is budgeted and paid, the State of New Jersey may seek to revoke the license at the Brick Offices.

14. Accordingly, the Cash Collateral Motion must be denied unless the Debtors fully set forth their profitability on an accrual basis through the end of January, fully disclose the extent of unpaid Chapter 11 administrative claims in these cases and demonstrate that under the proposed cash collateral budget, they will be able to remain current upon payment of Chapter 11 administrative claims during the next cash collateral period.

**Objection to Exclusivity Motion**

15. For many of the reasons set forth above, NJDIT opposes the Debtors' Exclusivity Motion. Answers to the questions posed above are necessary to determine whether or not this is a viable Chapter 11 case. The Debtors retained OEM Capital Corp. as of November 30, 2009, but the sale process with respect to the Debtors' assets has barely started. NJDIT has forwarded confidentiality agreements to OEM with parties interested in entering into a transaction with respect to the Brick Offices but such agreements have yet to be approved and executed by the Debtors. OEM's response to NJDIT has been to "be patient" but this is difficult where the

survival of NJDIT's practice is at stake. The Debtors' have not demonstrated any real progress towards reorganization in 3-1/2 months. During this time, they have alienated certain of their employees, equipment vendors, physician practices and suppliers. Under these circumstances, exclusivity should not be extended.

## **CONCLUSION**

For all the foregoing reasons, NJDIT respectfully request that the Court deny the Cash Collateral Motion and the Exclusivity Motion (unless the concerns set forth above are specifically addressed) and that the Court grant such other and further relief as is just.

Respectfully submitted,

By: /s/ John K. Sherwood
John K. Sherwood, Esq.
Michael Savetsky, Esq.
Cassandra Porter, Esq.
LOWENSTEIN SANDLER PC
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
- and -
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400

*Attorneys for New Jersey Diagnostic Imaging & Therapy, P.A.*

Dated: January 29, 2010