UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                          :        Chapter 11
                                                :
SONIX MEDICAL RESOURCES, INC., *et al.,* [1]    :        Case No. 09-77781 (dte)
                                                :
                            Debtors.            :        (Jointly Administered)
-------------------------------------------------------------X

## ORDER AUTHORIZING USE OF
## CASH COLLATERAL FOR FIFTH INTERIM PERIOD

Upon the Application dated October 15, 2009 (the "Application")[2] of Sonix Medical

Resources, Inc. ("Sonix Medical") and its affiliated debtors (the "Debtors") seeking entry of an

Order authorizing the Debtors, pursuant to sections 105, 361 and 363 of the Bankruptcy Code, to

use Cash Collateral upon the terms and conditions set forth herein for an interim period of time;

and a hearing having been held before me on February 18, 2010 to consider the entry of this

order (the "February 18th Hearing"); and upon the record of the preliminary hearings held before

this Court on October 22, 2009, November 12, 2009, December 10, 2009, February 4, 2010, and

February 18, 2010 with respect to the Application; and the Court having determined that granting

the relief requested in the Application for a fifth interim period of time on the terms agreed to by

CIT Healthcare in this Order is in the best interest of the Debtors, their estates, their creditors and

other parties in interest, and upon all of the pleadings filed in connection with the Application,

and upon the record of the February 18th Hearing held before this Court, and upon the record of

---

[1]     The Debtors include Sonix Medical Resources, Inc., MRI Resources, Inc., Toms River Resources, Inc., Stony Acquisitions, Inc., Sonix Management Resources, Inc., Chatmondhad Resources, Inc., QKSI Resources, Inc., Brooklyn 49th Street Resources, Inc., Englewood Resources, Inc., Chatham Medical Resources, Inc., and Brick Resources, Inc.

[2]     All terms not defined herein shall have the meanings ascribed to them in the First Interim Period Order.

all proceedings held before this Court in these Cases; and after due deliberation; and good and sufficient cause appearing therefore:

IT IS HEREBY ORDERED, ADJUDGED, DECREED, that the Order Authorizing Use of Cash Collateral dated October 26, 2009 [Docket No. 40] (the "First Interim Period Order"), the Order Authorizing Use of Cash Collateral dated November 12, 2009 [Docket No. 93] (the "Second Interim Period Order"), the Order Authorizing Use of Cash Collateral dated December 10, 2009 [Docket No. 144] (the "Third Interim Period Order"), and the Order Authorizing Use of Cash Collateral dated February 5, 2010 [Docket No. 232] (the "Fourth Interim Period Order", collectively called hereafter the "Cash Collateral Orders") be and hereby are amended and supplemented as follows[3]:

1. The terms and conditions of the Cash Collateral Orders remain in full force and effect, except as amended, modified or supplemented herein.

2. The Debtors are hereby authorized to use Cash Collateral for a fifth interim period (the "Fifth Interim Period") through and including March 12, 2010, subject to paragraph 5 herein, which period may be extended by written consent of CIT Healthcare in its sole and absolute discretion or by other order of the Court, in accordance with and to the extent as more fully set forth in the prior Cash Collateral Orders and the budget annexed hereto as Exhibit "A" (the "Fifth Period Budget"), for actual and necessary expenses to be paid during such period, provided however that to the extent that the Debtors require additional monies to address extraordinary items not otherwise addressed by the Third Period Budget, the Debtors may request consent from CIT Healthcare for such extraordinary expenses and in the event that

---

[3] Capitalized terms not defined herein shall have the meanings ascribed to them in the First Interim Period Cash Collateral Order.

CIT Healthcare does not consent to payment of such extraordinary expenses, then the parties may contact the Court for an expedited conference to resolve such dispute. All references in the Cash Collateral Orders to the terms "Budget", "Second Period Budget", "Third Period Budget", and "Fourth Period Budget", as the case may be, are hereby amended so as to include the term "Fifth Period Budget".

3. The Debtors' right to use Cash Collateral under this Order shall commence on the date of the entry of this Order and expire on the earlier of (i) March 12, 2010 at 5:00 p.m. (EST), subject to paragraph 5 herein, or such further date if so extended by written consent of CIT Healthcare or court order or (ii) the date of any order terminating the Debtors' use of cash collateral pursuant to Paragraph 11 of the First Interim Period Order. In no event shall the Debtors be authorized to use Cash Collateral for any purposes or under any terms other than those set forth herein and in the Fifth Period Budget, or as may otherwise be approved by this Court following notice and hearing as may be required; provided, however, that nothing in this Order shall be deemed a waiver of the Debtors' right to seek additional use of Cash Collateral or CIT Healthcare's right to oppose such request.

4. As additional adequate protection to CIT Healthcare for the Debtors' use of cash collateral, the Debtors agree as follows:

> (i) Beginning in the week ending December 25, 2009, bi-weekly reports to CIT Healthcare describing a status of the Debtors' operations and any potential sales process; and
>
> (ii) The Debtors will comply with all reporting requirements under the Cash Collateral Orders and Exhibit "B" to this Order.

Failure to timely perform in respect of each of the foregoing shall constitute "Events of Default" as defined in the First Interim Period Order.

5. In furtherance of the undertaking by the Debtors at the February 4th Hearing to select and, subject to court approval, employ a chief restructuring officer ("CRO") acceptable to CIT Healthcare, the use of cash collateral during the Fifth Interim Period shall automatically expire on February 26, 2010, unless on or before that date, the Debtors shall have filed an application seeking authority to employ an acceptable CRO who shall have a scope of duties and authority consistent with the position, responsibilities and duties set forth in the attached Exhibit "C" to this Order.

6. Notwithstanding anything contained herein or in the Cash Collateral Orders, the Replacement Liens shall be subject and subordinate only to a carve out (the "Carve-Out"). The Carve-Out shall be equal to (a) amounts payable during the Chapter 11 Cases pursuant to 28 U.S.C. 1930(a)(6) plus (b) amounts funded each week during the Fifth Interim Period (not to exceed $25,000 each week and $75,000 in the aggregate) into a Professional Fee Escrow (the "Professional Fee Escrow") to be established and held by Robinson Brog Leinwand Greene Genovese & Gluck P.C. ("Robinson Brog"). The sums held in the Professional Fee Escrow shall be utilized to pay fees and expenses of estate professionals employed during the Chapter 11 Cases in accordance with Bankruptcy Code §§ 327 and 1103(a) subject to such professional fees and expenses being awarded in accordance with Bankruptcy Code § 330 and as to OEM Capital Corp., in accordance with the order authorizing the retention of OEM as financial advisors to the Debtors. Interim disbursements from the Professional Fee Escrow as allowed under Bankruptcy Code § 331 will be permitted with the understanding that amounts not ultimately awarded will be returned by the professional and will remain subject to the CIT Replacement Lien. Weekly payments into the Professional Fee Escrow shall cease in case of an

Event of Default or on any event causing termination of CIT's consent to further use of Cash Collateral in accordance with this Order, and any payments into the Professional fee Escrow thereafter shall not be included in the Carve-Out. Under no circumstances shall the Carve-Out for professional fees and expenses (i.e., the monies funded into and disbursed from the Professional Fee Escrow) be used to pay any amounts incurred in connection with the assertion or prosecution of, or joinder in, a challenge to the validity, enforceability, perfection or priority of the liens securing the Prepetition Obligations or any other causes of action, including but not limited to causes of action under Chapter 5 of the Bankruptcy Code against and/or with respect to the Prepetition Obligations, and the Collateral, including all liens securing the Prepetition Obligations or CIT Healthcare.

7.     No expenses of administration of the Debtors' estates shall be charged pursuant to section 506(c) of the Bankruptcy Code, or otherwise, against the Collateral, and it is understood that the Carve-Out shall apply only in respect of the Replacement Liens. Nothing contained in this Order shall be deemed to be consent by CIT Healthcare, whether express or implied, to any claims against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

8.     This Order shall be binding upon and inure to the benefit of CIT Healthcare, the Debtors and their respective successors and assigns, including, without any limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the debtor under any chapter of the Bankruptcy Code.

9.     The terms and conditions of this Order shall (i) be effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential

application of Bankruptcy Rules 6004(g), 7062, 9014 or otherwise; and (ii) not be stayed absent

(a) an application by a party in interest for such stay in conformance with Bankruptcy Rule 8005,

and (b) a hearing upon notice to counsel to CIT Healthcare, the Office of the United States

Trustee, and counsel to the Debtors.

        10.     A further hearing on the Debtors' use of Cash Collateral shall be held

before this Court on March *9*, 2010 at *3:00 p.m.* at the United States Bankruptcy Court, Alfonse

D'Amato U.S. Courthouse, 290 Federal Plaza, Central Islip, 11722 the ("<u>Final Hearing</u>").

Opposition, if any, to the proposed Final Order shall be served upon the Debtors' counsel and on

all parties appearing under Bankruptcy Rule 2002 in these cases, the Office of the United States

Trustee, and the Clerk of this Court (marked "<u>Chambers Copy</u>") as well as filed on the Court's

electronic Docket, on or before *10*:00 *a.m.* on March *8*, 2010.

Dated: Central Islip, New York
      February *18*, 2010

 

                                      *s/ Dorothy Eisenberg*
                                      Honorable Dorothy Eisenberg
                                      United States Bankruptcy Judge