# AGREEMENT

This Agreement made this twenty-fourth day of February, 2010 by and between Sonix Medical Resources, Inc. and affiliates, (the **"Client"**), with its principal place of business at 150 Motor Parkway, Happauge, New York 11788  (the **"Facility"**) and Executive Sounding Board Associates Inc., a Pennsylvania corporation with offices at 1350 Broadway, New York, New York, 10018 (**"ESBA"**).  The Client is presently a Debtor-in-possession in Chapter 11 proceedings filed October 15, 2009 (the **"Bankruptcy Case"**) pending in the United States Bankruptcy Court for the Eastern District of New York (the **"Bankruptcy Court"**) as of case number 09-77781.

**WHEREAS,** Client's Board of Directors has voted to engage ESBA to provide a Chief Restructuring Officer (**"CRO"**) to direct the restructuring of Client's business; and

**WHEREAS,** Client and Board of Directors desires to retain the services of ESBA as set forth herein in accordance with the terms and conditions of this Agreement; and

**WHEREAS,** ESBA agrees to use its best efforts to provide the services to Client as set forth herein, in accordance with the terms and conditions of this Agreement.

**NOW THEREFORE,** in consideration of the mutual promises set forth herein, and intending to be legally bound, Client and ESBA hereby agree as follows:

*I)* **SERVICES TO BE RENDERED ON A REASONABLE EFFORTS BASIS**

    *A)* The duties of ESBA and the CRO in its conduct of their business on a reasonable efforts basis, on behalf of Client will include, without limitation, the full and exclusive authority with respect to the following duties:

        *1)* Day to day operational and/or financial management of Client,

        *2)* Negotiation and execution of financing relationships, including preparation of a situational analysis/business plan for submission to potential lenders

        *3)* Negotiation of and amendments to executory contracts,

        *4)* The compromise and settlement of disputed accounts payable and receivable and of notes payable and receivable

        *5)* The hiring and discharge of employees, professionals or third party service providers subject to Bankruptcy Court approval where required

        *6)* Control of the treasury functions of the Client including but not limited to the collection and disbursement of receipt, license fees, commissions and other funds due to Client.

*7)* Direct communication with Client's lenders, vendors, customers and employees

*8)* Oversight and management of Client's contractual relationship with its customers and of its customers' bank accounts to the extent such management is provided for in the customer contracts.

*9)* All departments, employees, agents, contractors, and/or any other person or entity acting on behalf of or performing any service for the benefit, of the Client shall report to the CRO.

*10)* Manage and transact any and all sales of any asset or property of the Client.

*11)* CRO shall act as the liaison for each of the Companies with their secured lenders and any statutory creditors' committee.

*12)* With respect to various third parties that are interested in purchasing, either in whole or in part, the capital stock or assets of the Client and/or in investing in the Client, based upon discussions with OEM and or their representative and agents, CRO may or may not conduct and participate in any and all discussions, including, without limitation, all initial or preliminary discussions or negotiations in or at whatever stage, and shall review all term sheets, proposal letters or any other similar documentation of any nature or description, including, without limitation, records of the Client which may be disseminated to any prospective purchaser prior to such dissemination. The CRO will exercise its professional judgment to avoid the duplication of effort with respect to those aspects of the sale process being addressed by OEM's role as sales advisor.

*13)* CRO shall be authorized and delegated the authority, without the need for further approval of the Client or Client's Board of Directors to enter into an agreement to sell any of the assets or businesses of the Client and shall be authorized to execute any required motions or applications to obtain the authorization of the Bankruptcy Court to sell such assets on such terms and conditions as the CRO shall deem necessary and appropriate in its sole discretion.

*14)* CRO shall be authorized to direct the activities of Client's bankruptcy counsel and other professionals with respect tot he conduct of Client's bankruptcy case.

*B)* Upon execution of this agreement by Client, ESBA shall be deemed to have been duly elected to the office of Chief Restructuring Officer in accordance with the by-laws of Client, and the by-laws or other proper corporate resolutions of Client shall authorize ESBA to perform the duties set forth in this Agreement. ESBA will execute it's powers hereunder through one or more representatives who will be employees of ESBA. It is anticipated that Josh Rizack will initially act as the CRO.

*C)* ESBA, and it's employees acting as CRO from time to time, shall be afforded the same insurance coverage and indemnification rights as any officer and director of the company, as Client shall have in effect from time to time. The Client will provide riders or other evidence of such insurance coverage to ESBA .

6051329v.4

**D)** Notwithstanding the foregoing, ESBA shall have no duty, no responsibility, and no authority with respect to regulatory compliance duties, including without limitation: (a) the management, handling, transport, disposal or remediation of hazardous waste or hazardous substances; (b) compliance with applicable federal, state or local statutes, ordinances, regulations orders and requirements of common law in any way affecting or pertaining to health, safety or the environment; and (c) filings with federal and state securities authorities and filings and payments to federal, state, and local taxing authorities, provided that ESBA shall have responsibility for it's willful misconduct and gross negligence relating to such areas and;

## *II)*   SERVICES TO BE PROVIDED BY RELATED THIRD PARTIES AND MANAGERS OF CLIENT

ESBA has been advised that Advanced Healthcare Resources, Inc. ("AHR") is party to an agreement with Client under which AHR provides accounting, billing and collection, human resource management and information management services among others directly to Client and through its affiliate Medi/Tab Consulting Co., Inc. ("MTC"). Additionally, John Colbert is Chief Financial Officer of the Client. ESBA understands that AHR and  MTC will continue to provide services through designated employees and contracts (including Mr. Colbert) as directed by the Court, the costs of which will be paid by Client as follows:

**A)** Client will enter into a direct agreement with MTC by which MTC continues to provide billing and collection services to Client in exchange for a payment of $18,000 per week. Such agreement will be terminable by Client on 30 days notice without any liability or obligation other than payment of the weekly charge above for work actually performed.

**B)** ESBA understands that AHR will provide personnel to support Client's operations through March 12, 2010, the costs of which will be reimbursed to AHR by client, at a cost not to exceed $30,000 per week. The CRO agrees to evaluate the cost and sourcing of these services for the period beginning March 13, 2010 and will make changes as deemed appropriate.

## *III)*   REGULATORY COMPLIANCE

All regulatory compliance decisions are and remain the responsibility of Client; and, without limitation, except as expressly provided above with respect to willful misconduct and gross negligence, ESBA shall have no duty, no responsibility, and no authority with respect to regulatory compliance duties, including, without limitation:  (1) the management, handling, transport, disposal or remediation of hazardous wastes or hazardous substances; (2) compliance with applicable federal, state or local statutes, ordinances, regulations, orders and requirements of common law in any way affecting or pertaining to health, safety or the environment; and (3) filings with federal and state securities authorities and federal, state and local taxing authorities.

## *IV)*   TERM OF AGREEMENT

*A)* This Agreement will commence and be effective upon its execution and end at the close of business May 15, 2010 ("**Ending Date**") unless terminated earlier by either of the parties hereto. Either party hereto may terminate this Agreement for any reason or no reason upon 5 days prior written notice without any adverse effect. Payment to ESBA will be made up to the date of termination. In the event either party does not afford written notice to the other of termination of this Agreement within 15 days of any Ending Date, the Ending Date shall be deemed extended by one month. Client shall, upon execution of this Agreement, cause the a motion to be made before the Bankruptcy Court to approve the terms of this agreement, effective as of the date of execution.

## *V)*    PLACE OF WORK

ESBA's services shall be performed at Client's Facility and at Clients various worksites as determined by ESBA.

## *VI)*   FEES TO ESBA

*A)* Retainer

Client agrees to pay to ESBA a retainer in advance of $7,500 upon execution of this Agreement. Subsequently on Monday of each week thereafter the client agrees to pay ESBA a weekly retainer of $20,000 and for the first four Mondays of this engagement, the client agrees to pay to ESBA payments of $3,125, to bring the initial signing retainer paid up to the $20,000 level. The fees and expenses of ESBA will be paid from this retainer.

*B)* Fees

ESBA's consultants for this engagement will be billed at $450 per hour for Mr. Rizack and Mr. Weil (the Project Manager). If other employees of ESBA are used in the engagement their hourly rate will as set forth in Exhibit "A" attached hereto. If the engagement lasts more than six (6) months, ESBA reserves the right to increase the hourly fee rates charged, upon written notice to the Client. ESBA billings for fees and out of pocket expenses will be rendered in compliance with procedures for "professionals" employed as part of a bankruptcy proceeding in the Bankruptcy Court. The Client acknowledges that ESBA invoices are due and payable in accordance with said rules. The Company will file and obtain an Order approving ESBA's engagement as a professional under Section 330 of the Bankruptcy Code as well as an administrative Order allowing for monthly payment of requested fees in interim amounts not less than 80% of the amount requested and 100% of expenses.

*C)* Expenses

Client agrees to reimburse ESBA for expenses incurred by ESBA by reason of this Agreement for travel, including air travel and rental car, and for lodging and meal expenses whenever ESBA's personnel are away from home. ESBA agrees to use its best efforts to keep such expenses at the lowest practical level. Reimbursement will be weekly.

6051329v.4

*B)* Taxes

Client agrees that all taxes due by reason of amounts payable, or paid, to ESBA under this Section VI (for instance, sales taxes) are the responsibility of and to be paid by Client, other than federal, state, and local taxes of the ESBA's place of residence.

*C)* Notwithstanding the above ESBA reserves the right to apply to the Court for a bonus or other fee enhancement upon proper notice to parties in interest.

## *VII)*    STATUS OF ESBA

*A)* Josh Rizack will be the individual designated by ESBA to act as the Chief Restructuring Officer, in performing this Agreement (the "ICRO"). Until such time as Client receives written notification to the contrary from ESBA such Individual has full authority to carry out this ESBA's duties hereunder.

*B)* Other representatives of ESBA shall be considered representatives of the Chief Restructuring Officer and shall have the authority to act as directed by the CRO.

*C)* ESBA's engagement shall be as an independent contractor and not as an employee of Client, and neither ESBA or it's employees will receive any remuneration from Client, including participation in disability, retirement, pension, profit sharing or other benefit or deferred compensation plans of Client, other than as set forth herein. The name of ESBA, and its personnel including the ICRO, shall not be set forth in any document of the Client, or otherwise used by the Client, unless the ESBA shall have previously consented thereto in writing.

## *VIII)*    INDEMNIFICATION AND HOLD HARMLESS

*A)* Indemnification and Hold Harmless

Client agrees to indemnify and hold harmless ESBA and its employees, to the full extent lawful, against any and all losses, actions, claims, damages, liabilities or costs including reasonable legal fees and expenses, except for claims and obligations arising from ESBA's gross negligence or willful misconduct (collectively, a **"Loss"**), whether or not in connection with a matter in which ESBA is a party, as and when incurred, directly or indirectly, caused by, relating to, based upon or arising out, directly or indirectly, ESBA acting for Client pursuant to this Agreement. ESBA shall not be held liable for errors in judgment. Notwithstanding the foregoing, Client shall have no duty to indemnify or to hold harmless ESBA for any loss, action, claim, damage, liability or cost to the extent such Loss is found, in a final judgment by a court of competent jurisdiction, to have resulted primarily and directly from the willful misconduct or unlawful activities of ESBA.

*B)* Limitation of Liability

6

6051329v.4

Client and its subsidiaries agree that ESBA's liability to Client, to the extent not otherwise limited, indemnified or held harmless hereunder, is further limited to the amount of fees paid to ESBA hereunder.

*C)* Included Indemnitees

Subject to the exceptions expressly herein contained, the indemnification and hold harmless provisions shall be in addition to any liability which Client may otherwise have to ESBA and shall include in addition to ESBA, the ICRO and CRO performing this Agreement, ESBA's affiliated entities, directors, officers, employees, agents and controlling persons of ESBA within the meaning of the federal securities laws. All references to ESBA in these indemnification and hold harmless provisions shall be understood to include any and all of the foregoing.

*D)* Counsel and Notification of Client

If any claim, action, proceeding, or investigation is commenced as to which ESBA proposes to demand such indemnification and to be held harmless, it will notify Client promptly upon becoming aware of any such action, proceeding or investigation. ESBA will have the right to retain counsel of its own choice to represent it, and Client will pay the reasonable fees and expenses of such counsel; and such counsel shall to its fullest extent consistent with its professional responsibilities cooperate with Client and any counsel designated by it. Client will only be liable for any settlement of any claim against ESBA made with Client's written consent, which consent shall not be unreasonably withheld.

*E)* Duration

Neither termination of this Agreement nor completion of the engagement of ESBA hereunder shall affect the indemnification and hold harmless provisions hereof which shall remain operative and in full force and effect.

*F)* Health, Safety and Environmental Inclusion

For purposes of indemnifying and holding ESBA harmless from any breach of the representations, warranties and covenants set forth hereunder, Client agrees to indemnify and hold harmless ESBA to the full extent set forth hereunder.

*G)* Litigation

In the event of litigation between Client and ESBA, the prevailing party shall be entitled to recover its reasonable fees and expenses, including attorney's fees

## *IX)* INFORMATION AND CONFIDENTIALITY

*A)* Information

7

6051329v.4

The Client agrees to provide access to all financial and other information and records, and to Client's directors, officers, employees, and representatives, creditors and other stakeholders, as ESBA deems appropriate.

ESBA agrees that all information, whether or not in writing, of a private, secret or confidential nature concerning Client is and shall remain the exclusive property of Client, and no such information shall be divulged by ESBA to third parties, unless such information becomes public knowledge or is required by order of a court. Client acknowledges that ESBA has been tasked with maintaining relations with Client's secured lender and specifically authorizes ESBA to divulge Client's confidential information to CIT and its affiliates in the course of executing this responsibility.

*B)* Personnel Disclosure

Client is responsible for bringing personnel matters (i.e., sexual harassment, substance abuse and the like) to the attention of ESBA.

*C)* Representations

Client is unaware of any material misrepresentations or misstatement made to any person with the exceptions of the following:  None.

*D)* Non Solicitation

Except for the services to be provided by ESBA pursuant to this Agreement, during the term of this engagement and for a period of two (2) years thereafter, the Client will not utilize, whether as employee or independent consultant, and whether directly or indirectly, the services of any person who is, was or had been employed by ESBA during the term of this engagement without the written consent of ESBA.

*E)* Reimbursement of certain expenses

If ESBA is requested or required to appear and or testify before any tribunal in connection with this engagement, whether or not pursuant to lawful process, all time spent and out-of-pocket expenditures by ESBA, including reasonable expenses for legal counsel, shall be considered to have been performed under the terms of this Engagement Agreement, and ESBA shall be entitled to receive payment of fees and reimbursement of expenses thereof from the Company.

*F)* Limitation on nature of services

ESBA is not an independent accounting firm or law firm and does not undertake the performance of an audit or the rendering of legal advice in this engagement. ESBA will rely upon financial data and legal advice provided by the Client and the Client's independent auditors and counsel, as applicable.

6051329v.4

## X) MISCELLANEOUS PROVISIONS

### A) Entire Agreement

This Agreement constitutes the entire understanding and agreement between the parties hereto with respect to the subject matter hereof and may not be amended, changed, modified, or supplemented, except in writing signed by each party.

### B) Assignment

Neither party shall sell, assign, convey or otherwise transfer this Agreement, or any of the rights, interests or obligations hereunder to any other party without the prior written consent of the other party.

### C) Notices

Any written notice required to be given hereunder shall be validly given if delivered personally or sent by registered or certified mail, postage prepaid, to the address of the party set forth in the opening paragraph of this Agreement, or to such other address as one party shall provide in writing to the other in accordance with this paragraph.

### D) Interpretation

The laws of the State of New York applicable to Agreements made and to be fully performed therein shall govern the validity, interpretation, and enforcement of this Agreement.

### E) Waiver

The waiver of any breach of any provision of this Agreement by a party to this Agreement shall not operate or be construed as a waiver of any subsequent breach by such party.

### F) Separability of Provisions

If any provision of this Agreement shall be or become illegal or unenforceable in whole or in part for any reason whatsoever, the remaining provisions shall nevertheless be deemed, valid, binding and subsisting.

### G) Headings and Paragraphs

The headings and paragraphs of this Agreement are for convenience only and shall not affect the interpretation of this Agreement.

## XI) DISCLOSURE

ESBA has many relationships in the business community involving lenders, law firms, accounting firms, consulting firms, independent consultant contractors, and others.   These

9

6051329v.4

relationships may include ESBA in the past or currently: receiving client referrals, providing client referrals, providing or receiving professional services, employing employees or contractors or serving as a contractor, and other types of relationships. These relationships may include lenders, professionals or others that have a connection with Client and/or ESBA's services provided under this Agreement. Such relationships are expected to continue and new ones may begin during the provision of services hereunder. ESBA represents that its independence in providing services hereunder is not compromised by such relationships, and is willing to confer with Client at Client's request concerning the specific nature of any such relationships ESBA may have.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the day and year first above written.

**Sonix Medical Resources, Inc. (SMR)**

By:_____    Dated:_____Feb 24 2010____
　　Om Sori, CEO

**Executive Sounding Board Associates Inc.**

By:_____    Dated:_____Feb 24 2010____
　　Herbert A. Weil

9

6051329v.4